UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                  :
UNITED STATES OF AMERICA                          :
                                                  :
                -v.-                              :            06 Cr. 684 (GEL)
                                                  :
PETER CASTELLANETA and                            :        **OPINION AND ORDER**
CURTIS GATZ,                                       :
                                                  :
                              Defendants.         :
                                                  :
-------------------------------------------------------------x


GERARD E. LYNCH, District Judge:

        Defendants move to dismiss the indictment in this mail fraud case as insufficiently

specific, and further seek a bill of particulars, a witness list, and early disclosure of Jencks Act

material.  The motions will be denied.

I.       Specificity of Indictment

        An indictment is sufficient "when it charges a crime with sufficient precision to inform

the defendant of the charges he must meet and with enough detail that he may plead double

jeopardy in a future prosecution based on the same set of events."  United States v. Stavroulakis,

952 F.2d 686, 693 (2d Cir. 1999).  To satisfy this test, an indictment need do "little more than

track the language of the statute charged and state the time and place (in approximate terms) of

the alleged crime."  United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975).  In

reviewing an indictment for sufficiency, a court reviews the indictment "as a whole."  United

States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999).

        The indictment in this case is in two counts, the first charging conspiracy and the second

mail fraud.  The conspiracy count tests the limits of this standard, charging simply that the

defendants conspired to commit mail fraud over a two and a half year period, without disclosing the nature of the scheme involved, and listing as overt acts only acts relating to the opening of a bank account and renting a mailbox in the name of a particular corporation – acts that could be part of a wide variety of schemes or frauds.  Taken together with the substantive mail fraud count, however, the indictment becomes clearer.  The substantive mail fraud count appears to charge a scheme to defraud the Queens Long Island Medical Group ("QLIMG") by the submission of false invoices on behalf of a sham corporation.[1]

The Court assumes that the mail fraud scheme charged in Count Two is the scheme that is the object of the conspiracy charged in Count One, and the case will be tried on that assumption unless by December 15, 2006, the Government provides the defendants and the Court clear notice, by means of a bill of particulars, that some other conspiracy is intended.  On that assumption, "defendant[s'] awareness of the true nature of the charges against [them] may be deduced [from] the language of both the conspiracy and substantive counts of the indictment." United States v. Sturdivant, 244 F.3d 71, 77 (2d Cir. 2001).

II.    Bill of Particulars

Defendants seek a bill of particulars requiring the Government to set forth such matters as who prepared and submitted each invoice, when and where each invoice was prepared and submitted, and what items on the invoice are alleged to be false and in what particular.  Such evidentiary detail as to precisely how the Government intends to prove its case is not required,

---

[1] The indictment alleges that the false invoices were "submitted to" QLIMG, and does not specify whether QLIMG or a third party was the actual victim of the scheme.  If the Court has misinterpreted the indictment in assuming QLIMG to be the alleged victim, the Government shall so indicate to the Court and defendants in writing by December 15, 2006.

2

and courts "routinely deny requests" for the specific "nature, time and place of every overt act the defendants or others [are alleged to have] committed." United States v. Butler, 351 F. Supp. 2d 121, 134 (S.D.N.Y. 2004).

In any event, the Government in its response to the present motion has confirmed what is apparent from a fair reading of the face of the indictment:

> The Indictment alleges . . . that the defendants operated a "sham" company that submitted false and fraudulent invoices to QLIMG . . . . A "sham" company obviously does not submit any legitimate invoices.  That the Government alleges all of the invoices submitted to QLIMG to have been substantively false in their entirety – that is, to reflect billing for services that the defendants' company did not render – is further apparent from the $595,000 figure, which the defendants know from discovery . . . to be the approximate total amount the defendants' company obtained from QLIMG.

(Govt. Mem. 10-11.)  Thus, the Government has represented, and it will be held to that representation, that the Government's theory of the case is that the invoices in question were totally fictitious in that they set for charges for services that were never provided.  No further specificity is required.

III.   Witness List

Defendants seek an order directing the Government to produce a witness list 30 days before trial.  Nothing in Fed. R. Crim. P. 16, which specifies the discovery to which a criminal defendant is entitled before trial, or in any other statute or rule, obligates the Government to disclose the identity of its prospective witnesses before trial.  United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980).  Courts have repeatedly denied requests for witness lists, absent some particularized showing of need, which defendants have not made here.  See, e.g., United States v. Victor Teicher & Co., 726 F. Supp. 1424, 1443 (S.D.N.Y. 1989); United States v. Wilson, 565 F.

3

Supp. 1416, 1438 (S.D.N.Y. 1983).  The cases cited by defendants, United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978), and United States v. Rueb, No. 00 Cr. 91 (RWS), 2001 WL 96177 (S.D.N.Y. Feb. 5, 2001), are distinguishable, as the cases there involved more complex schemes.  Here, the indictment alleges that the defendants operated a fictitious company and billed a particular medical group for services they did not perform.  The universe of potential witnesses is quite limited, and the defendants can have little doubt as to who is in a position to testify as to whether their company was or was not a sham, and whether the invoiced services were performed.

IV.     Jencks Act Material

        Finally, defendants seek early disclosure of witnesses' prior statements, required to be provided pursuant to 18 U.S.C. § 3500, and other impeachment material, required to be provided pursuant to Giglio v. United States, 405 U.S. 150 (1972).  The Constitution requires only that impeachment material be disclosed "in time for its effective use at trial."  United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001).  Since the constitutional rule for disclosure of exculpatory and impeachment material is not a rule of discovery, but turns on whether a defendant was denied a fair trial, courts may not order disclosure by a date certain in advance of trial, and the propriety of the Government's withholding of material until shortly before trial can only be authoritatively determined in a post-trial motion.  Id.  Wise prosecutors understand that delaying production of impeachment material until the last possible moment can create post-trial issues about whether defendants were able to make "effective use" of the disclosures, and avoid cutting close to the line.  The Constitution does not guarantee a wise prosecutor, only a minimally fair one, but the Court is confident the Government will exercise prudence as well as

compliance with minimal constitutional requirements.

With respect to prior statements of witnesses, the Jencks Act actually prohibits courts from ordering disclosure prior to the conclusion of a witness's direct testimony, 18 U.S.C. § 3500(a). As the Government acknowledges, it is customary in this District for 3500 material to be disclosed sooner than that, in order to avoid the continuances and trial delays that would be necessary if material necessary for cross-examination were not provided until after direct testimony. Accordingly, the Government indicates that in this case, it will provide such material "reasonably in advance of the witness's testimony (and typically no later than the Friday of the week before the witness is expected to testify)." (Govt. Mem. 16.) The Court expects the prosecutor to show good sense in assessing the volume of material to be provided and the expected pace of testimony in determining what is "reasonably in advance of the witness's testimony," in light of the twin imperatives of fairness to the defendants and making efficient use of the Court's and the jury's time. The Court has ample means to deal with any failure to respect these imperatives.

For the foregoing reasons, defendants' motions are denied.


SO ORDERED.

Dated:  New York, New York
        November 20, 2006

                                        GERARD E. LYNCH
                                        United States District Judge